UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| WAYNE BRYANT, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 3:11 CV 495 |
| HONEYWELL INTERNATIONAL *fka* ALLIED SIGNAL; LOCAL 9 UNION AUTO WORKERS UNION; and UAW INTERNATIONAL; | ) |  |
| Defendants. | ) |  |

## OPINION and ORDER

**I. BACKGROUND** [1]

Plaintiff Wayne Bryant began working for defendant Honeywell International, formerly known as Allied Signal,[2] in 1981. Plaintiff worked as a machinist for three months, and as a "jig bore" operator for approximately eight months. Plaintiff was laid off, and after working for several different employers, was recalled by defendant in 1998. Plaintiff was again laid off in 2001, and again recalled in 2004, at which point plaintiff worked as a computer numerically controlled ("CNC") machine operator. The parties have stipulated that only basic arithmetic is required for CNC machine operation, and that the CNC machine operator position is not a skilled trade classification.

---

[1] The following facts are undisputed unless otherwise described.

[2] The company was known by different names during plaintiff's tenure, but the details of the corporation's ownership are largely irrelevant to this dispute.

In 1982, plaintiff obtained a Journeyman's card as a precision machinist from the International Association of Machinists and Aerospace Workers ("AFL-CIO") because he had eight years of experience running a bore mill at the time. For all relevant time periods, plaintiff was a member of the Local 9 United Auto Workers Union ("UAW").

In 2007, plaintiff applied for the position of "Manufacturing Layout/Tool & Gauge Inspection." The position is the result of defendant and the UAW's agreement to combine the Inspector Layout and Inspection Tool & Gauge positions in a bargaining agreement in 2003. (DE # 32-18 at 3, Hansen Aff. ¶ 6.) The inspector position is a skilled trade classification certified by the Department of Labor ("DOL") as an apprentice trade. (*Id.*) Plaintiff was not awarded the promotion (according to defendant, due to lack of qualifications). He later filed a grievance with the UAW and a lawsuit in 2008, and the case was settled in 2009.

In 2010, plaintiff applied for the same inspector position. He was 61 at the time of the application. By agreement between defendant and the UAW, the following were advertised as qualifications for the inspector position:

> Must have previously held this classification
> Journeyman's card or equivalent.

(DE # 32-12 at 2.) The parties do not dispute that the posting advertised three alternative qualifications. Plaintiff stated in his deposition that he did not meet the first of the three qualification options, because he did not possess the inspection classification. (DE # 32-1 at 44, Pl. Dep. 93:22-24.) As for the latter two qualifications, which are somewhat vague based on the job posting, the parties have stipulated that an

2

agreement between the UAW and defendant required that the applicant either: (1) possessed a Journeyman's card; or (2) possessed eight years of equivalent work experience in inspection, calibration, and repair of commercial gauging.

Eight employees applied for the position, and defendant ultimately awarded the position to Joe Cole, a white male, age 43. (DE # 32-18 at 6, Hansen Aff. ¶ 15.) Defendant asserts that it chose Cole because he possessed a Journeyman's card in tool and die – a skilled trade – from the UAW. (UAW Skilled Trades & Classifications Chart, DE # 32-18 at 53.)[3] Of the seven rejected applicants, six were white and one (plaintiff) was black. (*Id.*) Three of the seven rejected candidates were younger than Cole (ages 34, 35, and 38), and four were older than Cole (ages 48, 54, 55, and plaintiff – age 61). (*Id.*) Both the UAW and defendant informed plaintiff that he did not get the job because he was not qualified. (DE # 32-1 at 49, 53-54; Pl. Dep. 102, 112-13.)

Plaintiff argues that the Journeyman's card requirement was vague and non-specific, and that any Journeyman's card should have sufficed. Defendant, on the other hand, contends that only a Journeyman's card in an associated skill such as tool and die qualified an applicant for the inspector position. Plaintiff also claims that he had at least eight years of experience qualifying him for the inspector position. Specifically, plaintiff claims that he had "more than eight [8] years of equivalent experience" in the following

---

[3] Plaintiff attested that a tool and die Journeyman and machinist Journeyman possess the same core competencies, but a tool and die Journeyman must do more to earn his card, such as learning to make tools and dies. (DE # 32-1 at 53-54; Pl. Dep. 111-12.)

3

positions: "Tool jig bore . . . [,] Jig boring machinist . . . [,] Experimental machinist . . . [,] Boring Machine Tool Room" (DE # 59 at 8, Pl. Aff. ¶ 31), though plaintiff did not provide details about the length of time spent in each of these positions. Defendant argues that plaintiff's experience did not qualify him for the inspector position because jig bore operator was not a classification recognized by defendant, that in any event plaintiff had not utilized a jig bore since the early 80's, and that unskilled machinist work (such as CNC machine operation) is not equivalent experience for purposes of the inspector position. Plaintiff testified that defendant no longer utilizes jig bore, that defendant does not recognize a jig bore classification, and that he has not used a jig bore since the early 80s. (DE # 32-1 at 33, 38, Pl. Dep. 67, 79.)

On November 5, 2010, plaintiff filed a grievance with the UAW regarding defendant's failure to promote him. At a union meeting on June 2, 2011, plaintiff was advised by a union leader that the grievance had been "thrown out" and that no further action would be taken on the matter. (DE # 59-7 at 26, Pl. Dep. 185.) Plaintiff did not file an internal appeal with the UAW or do anything else regarding the grievance. (DE # 32-2 at 60, Pl. Dep. 119.)

On December 29, 2010, plaintiff filed a complaint of age and race discrimination against defendant with the DOL's Office of Federal Contract Compliance Programs based on defendant's failure to promote him to the inspector position in 2010. (DE # 32-1 at 61, Pl. Dep. 119-20.) The DOL concluded that plaintiff "did not meet the minimum qualifications for the position" because the jigbore classification that he relied upon to

4

demonstrate eight years of experience had not been an active classification since 1992, and concluded that defendant did not engage in discrimination. (DE # 32-17 at 5.) Plaintiff believes the DOL either made a mistake or was "bought off." (DE # 32-1 at 62, Pl. Dep. 121:16-25.)

On May 3, 2011, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging age and race discrimination based on defendant's failure to promote him to the inspector position in 2010. (DE # 32-16 at 2.) The EEOC issued a right-to-sue letter on September 29, 2011, because it was unable to conclude that a violation of law occurred. (DE # 1, Ex. 1.) Plaintiff filed the present lawsuit on December 22, 2011, against both defendant and the UAW. (DE # 1.) Plaintiff voluntarily dismissed his claims against the UAW on April 28, 2003. (DE # 52.)

Defendant moved for summary judgment on plaintiff's complaint on January 30, 2013. (DE # 29.) The briefing period related to this motion was long and protracted, with numerous extensions being granted, especially to plaintiff's counsel. Plaintiff's counsel repeatedly failed to abide by deadlines and comply with applicable rules. After receiving five extensions for the filing of his response brief, plaintiff filed multiple exhibits late, and failed to respond to an order by the court to show cause for the deficiency, resulting in the exhibits being stricken from the record. (DE # 71.) Plaintiff asks the court to "reconsider" its order striking the untimely-filed exhibits from the record. (DE # 72.) Defendant also filed a RULE 56 motion to strike various evidence submitted by plaintiff. (DE # 84.) Plaintiff has also asked for permission to file a

5

"corrected" response brief addressing many of the issues raised by defendant's motion to strike. (DE # 90.) Finally, defendant has moved to strike plaintiff's sur-reply which was filed without court permission. (DE # 95.) Each motion is addressed in turn below.

## II.   ANALYSIS

### A.   Plaintiff's Motion for Reconsideration

Plaintiff asks the court to "reconsider" its order striking the untimely-filed exhibits from the record. (DE # 72.) "It is well established that a motion to reconsider is only appropriate where a court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Broaddus v. Shields,* 665 F.3d 846, 860 (7th Cir. 2011), *overruled on other grounds by Hill v. Tangherlini,* 724 F.3d 965 , 967 n.1 (2013).

In this case, plaintiff's counsel contends that this district's Electronic Case Filing System ("ECF") shut down at 7:00 p.m. on May 3, 2013, the day of the relevant deadline, and that this shut-down was "unexpected." (DE # 72 at 1.) Counsel's word choice suggests that perhaps the system experienced some sort of technical issue or emergency maintenance. However, a "screen shot" of this district's public webpage, submitted by plaintiff's counsel herself as an exhibit in support of her motion, reveals that the public was notified on April 23, 2013, that "ECF will be unavailable from 7:00 PM EDT on Friday, May 3, 2013 until 11:00 PM EDT on Sunday, May 5, 2013." (DE # 72 at 4.) This

information was listed at the top of the court's website with a red headline reading "04/23/2013 - Public Notice: System Maintenance." (*Id.*) The failure of plaintiff's counsel to heed this warning and file in advance of this planned shut-down is not a sufficient reason for the court to reconsider its decision to strike plaintiff's untimely exhibits. Further, plaintiff's counsel appears to overlook, entirely, the fact that counsel was given an opportunity to explain the untimely filing of the exhibits (*see* Show Cause Order, DE # 68), but failed to abide by this court's order to show cause. To date, counsel has provided no explanation for her shortcoming in this regard. Only after this additional failure were plaintiff's already-untimely exhibits stricken from the record.

But it matters not. Even if the court considers all of plaintiff's untimely-filed exhibits, he still cannot survive defendant's motion for summary judgment, as explained in detail below. Accordingly, the court will grant plaintiff's motion to reconsider (DE # 72) and vacate its order striking plaintiff's exhibits.

    B.    **Plaintiff's Motion to File a "Corrected" Brief**

Plaintiff also seeks leave to file a "corrected" brief in opposition to defendant's motion for summary judgment. (DE # 90.) Defendant opposes the motion. The court is inclined to deny the motion, because plaintiff's counsel seeks primarily to correct errors of her own making because defendant has pointed them out in its RULE 56 motion to strike. Nonetheless, because the corrected brief stands no more of a chance at surviving defendant's motion for summary judgment than the original brief, the court grants the

motion and will consider plaintiff's "corrected" response brief when analyzing defendant's motion for summary judgment.

C.     **Defendant's Motion to Strike Sur-Reply**

Defendant has moved to strike a document (DE # 91) filed by plaintiff entitled "Objection by Wayne Bryant to . . . Memorandum in Support [of defendant's Rule 56 Motion to Strike]." (DE # 95.) Despite the confusing and incorrect nature of this title, this document is actually a sur-reply opposing defendant's reply brief that was filed in support of its motion for summary judgment. Sur-replies are not permitted in this district without leave of court. *See* N.D. IND. L.R. 7-1; *Taylor v. Lifetouch Nat'l Sch. Studios, Inc.,* 490 F. Supp. 2d 944, 950 (N.D. Ind. 2007) ("The ability to file a surreply may be gained only by leave of the court and by the showing of some factor that justifies deviation from the rule."). Plaintiff did not request permission to file a sur-reply, and has not attempted to justify this shortcoming. Accordingly, the court should strike plaintiff's sur-reply. However, because the sur-reply does not possess any content that sways the summary judgment analysis in plaintiff's favor, the court denies defendant's motion for the sake of argument, and will consider plaintiff's sur-reply.

D.     **Defendant's RULE 56 Motion to Strike**

Defendant has moved to strike portions of plaintiff's brief in opposition and supporting exhibits. (DE # 84). Again, because the evidence submitted by plaintiff (whether admissible or inadmissible) does not affect the court's summary judgment ruling, the court denies defendant's motion to strike for purposes of this analysis.

### E. Defendant's Motion for Summary Judgment

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all

legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995).

   1.   *Discrimination Based on Race and Age*

Plaintiff's main claims against defendant allege discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* and on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621, *et seq.* Plaintiff claims that defendant engaged in discrimination by denying him a promotion to the position of inspector because of his age (61, at the time of the employment decision) and because he is African-American.

Plaintiff's claim for failure to promote can be supported in one of two ways: either by proffering direct or circumstantial evidence that racial discrimination motivated the employment decision (known as the direct method), or by relying on the indirect, burden-shifting method outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Nichols v. S. Ill. Univ.-Edwardsville,* 510 F.3d 772, 783 (7th Cir. 2007) (citing *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736-37 (7th Cir. 2006)). Plaintiff relies only upon the indirect *McDonnell Douglas* method, so the court confines its analysis accordingly.

The *McDonnell Douglas* method has three steps. The first step requires a plaintiff to establish a prima facie case of discrimination. To do so, a plaintiff must show: "1) he belongs to a protected class, 2) he applied for and was qualified for the position sought, 3) he was rejected for that position and 4) the employer granted the promotion to

someone outside of the protected group who was not better qualified than the plaintiff." *Fischer v. Avanade, Inc.,* 519 F.3d 393, 402 (7th Cir. 2008). The purpose of the prima facie case is to screen out cases "where the plaintiff fails to distinguish his or her case from the ordinary, legitimate kind of adverse personnel decision." *Jayasinghe v. Bethlehem Steel Corp.,* 760 F.2d 132, 134 (7th Cir. 1985).

It is not disputed that plaintiff can satisfy the first and third elements of the prima facie case. However, the parties dispute whether plaintiff was "qualified" for the position sufficient to establish the second element. Plaintiff is required to show only that he met the objective qualifications for the position sought. *See Jayasinghe,* 760 F.2d at 132. The posted qualifications for the inspector position in this case were: (1) holding the appropriate classification; (2) a Journeyman's card; or (3) equivalent experience.

There appears to be no genuine dispute that plaintiff did not hold the appropriate classification.[4] However, plaintiff points out that he held a Journeyman's card, which qualified him for the position. Plaintiff argues that the job posting required only a "Journeyman's card," not any specific type of Journeyman's card, and that he possessed a precision machinist card from the AFL-CIO. Defendant argues that a Journeyman's card held by an applicant must have an associated skill that reflects that the applicant actually has the skill and experience for the job – in this case, skills related

---

[4] Though the arguments made by counsel for plaintiff might be read as advocating that plaintiff did, in fact, hold the classification, any such argument is belied by plaintiff's own deposition testimony, in which plaintiff attested that he has never held this classification. (DE # 32-1 at 44, Pl. Dep. 93:22-24.)

11

to inspection, calibration, and repair or commercial gauging – and that plaintiff's card from the AFL-CIO did not apply. Plaintiff argues that, in any event, the job posting allowed for the substitution of "equivalent" work experience, and he possessed that. Defendant argues that plaintiff had one year of experience in the 1980s as a jig bore operator (a classification not recognized by defendant), and work as a machine operator, and that these experiences did not suffice as "equivalent" experience for the Manufacturing Layout/Tool & Gauge inspector position.

Even assuming for the sake of argument that plaintiff was "qualified" for the position, and thus could satisfy the second element of his prima facie case, plaintiff still cannot succeed. Under the fourth prong of the prima facie case, plaintiff must demonstrate that the job went to someone "outside of the protected group who was not better qualified than the plaintiff." *Fischer,* 519 F.3d at 402. In other words, plaintiff must show that he was just as or more qualified than Cole, who ultimately got the job, and plaintiff cannot do so. Cole possessed a Journeyman's card in tool and die – a skilled trade – from the UAW (UAW Skilled Trades & Classifications Chart, DE # 32-18 at 53), whereas plaintiff only possessed a Journeyman's card as a precision machinist. Plaintiff attested that a tool and die journeyman and machinist journeyman possess the same core competencies, but a tool and die journeyman must do more to earn his card, such as learning to make tools and dies. (Pl. Dep. 111-12; DE # 32-1 at 53-54.) Thus, according to plaintiff's own testimony, someone with a tool and die Journeyman's card possesses more skills than someone with a machinist Journeyman's card.

12

But even assuming that plaintiff could establish all four prongs of his prima facie case, defendant easily survives the second phase of the *McDonnell Douglas* analysis. In this phase, defendant must articulate a legitimate, non-discriminatory reason for its decision not to hire plaintiff. *Fischer,* 519 F.3d at 402. In this case, defendant asserts that it hired Cole instead of plaintiff because Cole had a Journeyman's card in tool and die from the UAW. It also claims that it found it helpful that Cole had a four-year degree in finance with higher-level math courses. This is a sufficient articulation of a legitimate, non-discriminatory rationale for hiring Cole.

This leaves plaintiff at the last phase of the *McDonnell Douglas* analysis: the pretext phase. At this point, the court must examine the pertinent issue of whether there was discrimination in the job action. *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). The question of whether plaintiff was qualified for the job now merges with the question of whether defendant lied about its reasons for hiring Cole over plaintiff. *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009) ("When an employee claims that he is qualified and that the employer is lying about the reasons for an adverse employment action, the second [prima facie] prong and the pretext question merge."). Plaintiff can demonstrate that defendant's explanation is pretextual directly by showing that "a discriminatory reason more likely motivated" defendant's employment action, or indirectly by showing that defendant's explanations are "unworthy of credence." *Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009) (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)).

Plaintiff cannot demonstrate pretext directly, because he has no evidence that a discriminatory reason – either age or race – played a role in the employment action. An indirect approach fares no better, because plaintiff cannot show that defendant's explanations for its choice of Cole are unworthy of credence. There is no genuine issue regarding the fact that plaintiff did not hold the relevant classification or that Cole possessed a Journeyman's card that required a higher level of skills and experience than the card possessed by plaintiff. And even assuming plaintiff had more than eight years of job experience which qualified him for the job, this does not show that defendant's stated rationale for hiring Cole – that it felt Cole was the most qualified applicant – was *a lie*. Plaintiff only attempts to argue that defendant's perception of Cole's superior qualifications was not a correct perception. This attempt is insufficient. The Seventh Circuit has articulated "countless times" that "the question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the *true ground* of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground. If it is the true ground and not a pretext, the case is over." *Forrester v. Rauland-Borg Corp.,* 453 F.3d 416, 417 (7th Cir. 2006) (emphasis added); *see also Ptasznik v. St. Joseph Hosp.,* 464 F.3d 691, 696 (7th Cir. 2006) (the pretext inquiry must focus on whether the employer's stated reason is honest, not whether it is well-reasoned, wise or accurate). As the Seventh Circuit aptly stated in *Millbrook v. IBP, Inc.*:

> [A] court's role is to prevent unlawful hiring practices, not to act as a super personnel department that second-guesses

> employers' business judgments. As we have stated, no matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [anti-discrimination law] does not interfere. Rather, this court must respect the employer's unfettered discretion to choose among qualified candidates.

280 F.3d 1169, 1181 (7th Cir. 2002) (internal quotation marks, alterations, and citations omitted); *see also Blise v. Antaramian,* 409 F.3d 861, 867-68 (7th Cir. 2005) ("Blise may be right—she may be more qualified than Davis, and Davis may not be qualified at all—but so long as Kenosha genuinely believed differently (and Blise offers us no evidence that its agents did not), it is entitled to act on that belief.").

Further, "where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Millbrook,* 280 F.3d at 1180. There is no such evidence in this case. All of the evidence in this case suggests that Cole was actually the more qualified candidate, and even if this were not the case, the evidence of plaintiff's qualifications as compared to Cole's are not so tilted in plaintiff's favor that no reasonable persons could disagree about whether plaintiff was better qualified. In the words of *Forrester,* "the case is over." 453 F.3d at 417. Summary judgment for defendant is appropriate on plaintiff's discrimination claims.

15

2. *Hostile Work Environment*

Plaintiff attempts, for the first time, to raise a hostile work environment claim in her response brief, based on verbal abuse purportedly directed at plaintiff during the course of his employment. Specifically, plaintiff claims that defendant's employees referred to him by a racial epithet, and a manager in charge of hiring stated that he would not hire "the mother fucker," in reference to plaintiff. (DE # 90-1 at 16-17.)

A prerequisite to filing a lawsuit under Title VII is that the plaintiff has exhausted his administrative remedies. 29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5. In order to do so, a plaintiff must timely file a charge with the EEOC encompassing the acts complained of. *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 863 (7th Cir. 1985). An EEOC charge may encompass a claim if the claim is "like or reasonably related to the allegations of the charge and growing out of such allegations" such that there is a "reasonable relationship between the allegations in the charge and the claims in the complaint." *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994).

Though plaintiff did file a charge of discrimination with the EEOC, it contains no allegations that suggest any verbal abuse or any other facts suggesting the existence of a hostile work environment claim. Rather, the charge relates entirely to plaintiff's claim that defendant discriminated against him by failing to promote him to the inspector position in 2010. The fact that some of the alleged verbal abuse was allegedly perpetrated by a manager in charge of hiring is not dispositive. "Any additional alleged act of discrimination can always be fit in and become part of an overall general pattern

16

of discrimination. [Such an] argument, if accepted, would eviscerate the general rule that each separate act of discrimination must be set out in an EEOC charge before an action can be brought." *Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010). Because plaintiff failed to include any facts relevant to a hostile work environment claim in his charge of discrimination, the court considers the claim procedurally barred and it must be dismissed.

    *3.*    *Breach of Contract*

Plaintiff also attempts to defend his breach of contract claims.[5] The first argument appears to involve the UAW's alleged failure to properly process plaintiff's grievance. (DE # 90-1 at 18-21.) Plaintiff has voluntarily dismissed the UAW (both the international organization and the local chapter) from this case (DE # 52), so any claims plaintiff seeks to support with this argument are dismissed as moot.

The remaining arguments appear to relate to defendant's alleged failure to honor plaintiff's seniority rights as they were set forth in the collective bargaining agreement between defendant and the UAW. A claim based on a contract between an employer and a labor organization is governed by Section 103 of the Labor Management Relations Act ("LMRA"). 29 U.S.C. § 185(a). Any such claims must be filed within six months of a final decision on a claimant's grievance, or from the time the claimant discovers, or in

---

[5] It is difficult to discern precisely what counsel intended to argue with regard to the contract claims, as some of the arguments lack basic grammatical structure and are followed by non-specific citations to "deposition." (*E.g.*, DE # 90-1 at 22.) The court has reviewed the deposition testimony in the record only to find no support for plaintiff's arguments contained therein.

17

the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance. *Richards v. Local 134, Int'l Bhd. of Elec Workers,* 790 F.2d 633, 636 (7th Cir. 1986). In this case, plaintiff admitted in his deposition that he learned on June 2, 2011, that his grievance was "thrown out" and that no further action would be taken on the matter. (DE # 59-7 at 26, Pl. Dep. 185.) He did not file his complaint until December 22, 2011. Accordingly, his claim is time-barred.

Plaintiff's response brief includes a short (and at times incoherent) argument that equitable tolling should apply to avoid the statute of limitations. Specifically, plaintiff states: "Plaintiff stated that: (a) the information that he needed for a timely pursuit of this lawsuit was not known to him prior to June 9, 2012 (i.e., six months before the complaint was filed). deposition at; and (b) he exercised diligence in attempting to obtain the necessary information during the limitations period. Deposition." (DE # 90-1 at 22.) This argument is meritless. First, despite plaintiff's nebulous citations to plaintiff's deposition, no support for plaintiff's argument is found in the deposition testimony in the record. Second, the date of accrual advocated by plaintiff ("June 9, 2012," supposedly "six months before the complaint was filed") inaccurately characterizes the complaint's filing date, which was clearly December 22, 2011. (DE # 1.) In short, plaintiff's equitable tolling argument is baseless.

Plaintiff also attempts to argue, rather confusingly, that his claim regarding defendant's failure to abide by the collective bargaining agreement is somehow exempt from the LMRA and can be analyzed under state law breach of contract principles. This

18

argument is meritless and borders on frivolous. It is well-settled that Section 103 preempts any state cause of action for violation of a contract between an employer and a labor organization. *Franchise Tax Bd. of State of Calif. v. Constr. Laborers Vacation Trust for S. Calif.,* 463 U.S. 1, 23 (1983). Summary judgment is appropriate on all of plaintiff's contract claims.

## III. CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration is **GRANTED** (DE # 72) and the court **VACATES** its order at docket entry # 71; plaintiff's motion to file a "corrected" response brief is **GRANTED** (DE # 90); defendant's RULE 56 motion to strike is **DENIED** (DE # 84); defendant's motion to strike plaintiff's sur-reply is **DENIED** (DE # 95); and defendant's motion for summary judgment (DE # 29) is **GRANTED**. Finally, the court **STRIKES** docket entry # 92, filed by plaintiff, as it appears to be a duplicate of plaintiff's response to defendant's RULE 56 motion to strike, which is also filed at docket entry # 93.

Because no claims remain against any parties in this case, the Clerk is now ordered to **ENTER FINAL JUDGMENT** in this case, stating:

> Judgment is entered in favor of defendant Honeywell International, Inc., formerly known as Allied Signal; and against plaintiff Wayne Bryant, who shall take nothing by way of his complaint.
>
> **SO ORDERED.**

Date: March 28, 2014

    s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT